May it please the Court, Mr. Schmidt, counsel, Arthur Schmidt for the appellants. I'm going to try to leave two minutes for rebuttal. This case arises out of a conflict between a contract and a federal statute. So far as anyone knows, the statute is constitutional. If you read it, it says by its own words that it's controlling on the facts of this case. And yet, the trial court came to the conclusion, which it thought was compelled by the Kimberley case, that the statute just doesn't apply to these facts. And since I disagree with that reading of Kimberley, I'd like to focus today on the difference between the two things that Kimberley actually did hold and the way the trial court, in my opinion, overread the case. First, Kimberley did hold that ELIPA, the statute in question, was not a so-called sovereign act. Now, the trial court took this phrase to mean, this phrase, sovereign act, to be the equivalent somehow of a valid statute or a statute that has to be obeyed. And by reading it that way, it set itself up for what I think was really a false choice, which I think went something like this. This is a conflict, a clear conflict, between a statute and a contract. One has to get enforced, and the other one has to get torn to shreds. The one thing we all know from reading the Kimberley case is you can't tear the contract to shreds. Therefore, I'm going to tear the statute to shreds. And that's the only way I can see that the court got to the conclusion that the statute just doesn't apply. Your position is, as I understand it, that even applying Kimberley, there remains the choice of specifically enforcing the contract or providing a damage remedy. Is that right? Well, we say the choice of specific relief is foreclosed, just by the – for the reasons we go into at great length in the brief, the separation of powers issue. Now, I understand you have an opinion on that subject. Yes, that's right. I guess the way to articulate it would be, even in the face of Kimberley, that choice is available to the district court between those two remedies. I would – I guess if I understand you correctly, I'd say that's right. But I'd say also that, you know, for reasons that I can say – And its description of the act in question doesn't mean that the damage remedy is foreclosed. Oh, no. There's a damage case going on right now in the court of claims. I think we've cited to it in our briefs. I think they've enjoyed some success in that case since the briefs have been filed. So, no, I – nothing forecloses a damages remedy. I'm – that's where they belong with the – in the court of claims with the damages remedy. Why should the specific performance remedy be foreclosed? Because – because the – because the tenants have brought a case under the APA. And, well, I guess the short answer to your question is because they don't have a cause of action for quiet title. They – what they've got is kind of a hybrid. They've got a claim that's purely based on contract that says, we have this contractual right to force the government to accept our prepayment. And then they've got a quiet title. You know, they've styled it as a – they're asking for quiet title. Now, for the – for the contract claim, they've got the – you know, they've got a cause of action, certainly, in the contract. But there's no – you know, anytime you sue the government for anything, you need two things. You need a waiver of immunity, and you need a claim for relief. They've got the claim for relief in the contract claim, but they don't have a waiver of immunity. For quiet title, you know, if they could show that rejection of their tender was wrongful or if they could get the government to accept it, for the quiet title claim, they've – they've for sure got a waiver of immunity, 28 U.S.C. 2410, but that doesn't get them to – to a claim for relief. To have a claim for relief, you've got to – you've got to find substantive law somewhere. You don't find that in 2410. And, you know, I acknowledge there's an unfortunate reference in Kimberley to Idaho state law, but, you know, you've got to – you know, that's why we cite all those Supreme Court cases, the Kimball Foods and Clearfield Trust, O'Melveny and Myers. You know, what they say is you've got to have – in a Federal program, the source of law is Federal, and Federal courts certainly can adopt state law. And, in fact, the way the state of the law is now, they should adopt state law unless there's a good reason not to. And in, you know, in 999 out of 1,000 quiet title cases, there really isn't going to be a good reason not to. You know, there's just going to be some taxpayer who's made peace with the IRS and he wants a cloud removed from his title. You know, the state law works just fine as the rule of decision in those cases. But what's missing from those cases, and, in fact, what's missing from Kimball Foods and Clearfield Trust and every other case in the history of the Republic that ever adopted state law as the Federal rule, what's missing is the 800-pound Act of Congress that we've got in this case. Let me ask you, Mr. Schmidt, if you prevail, how will this play out? We would send it back to the district court on the APA case with directions to have a trial on the merits about whether the agency violated the APA or – I'm not sure it would be a trial. A resolution on the merits in some fashion. Yes. And then if you prevail, what happens? The ALIPPA process is followed. The tenants get the benefit of all of the – Are sales unwound? Oh, sure. Yeah. The Seacrest sale would certainly be unwound. You know, it's – we cite – if you're questioning the court's ability to do that, we've cited Northwest Wildlife Federation versus ESPE and there are others that talk about specifically the power to undo conveyancing under the APA. Is there any reason why that case doesn't take care of the – your client's problem as opposed to having to intervene in the other case? That's a tricky question. I don't understand why you need to intervene, I guess is what I'm saying. You know, I don't have as firm a conviction about – I don't feel as sure of myself about the intervention. You remember that the trial court said you don't need intervention because your own APA case gives you everything that you could possibly get in – if we were allowed to intervene. And all I can say is I hope the trial court's right about that. And if you were to write something that says the trial court's right about that, I think we would have an easier time. The basic obstacle to us is that, you know, at bottom, with respect to Seacrest, we're trying to collaterally attack a judgment to which we are strangers. And although I fervently believe in the power of the APA to unwind that deal and that judgment, there's a sense in which – and you probably picked this up from the briefs – there's a sense in which I'm a little leery of going back into that case and having the district judge say down the road, ah, you know, you should have intervened. It sounds like the answer to the judge's question is no. No is an explanation. But I think it's only no if you say it's no. Well, what I have wondered about the intervention – it could just be because I don't fully understand this – is whether the fact – whether there are different standards applicable in the APA case, a different standard for relief, as opposed to in the quiet title case. And if that's true, whether that means being in the APA case isn't – doesn't give you all you need. I think the answer to that question is no, there aren't different standards. I mean, certainly there's a different test we have to meet in order to intervene in the first place in the quiet title action. But once we're there, once we're allowed to intervene, the only thing we've asked for is the right to bring that APA case again, or bring that APA case, an unwind appeal. You know, the trial judge was right about that. I mean, we really do – I mean, one is a carbon copy of the other, in her words. So I – you know, I think you – I think I – you know, I – the intervention was kind of a precaution. And the appeal from intervention was kind of a precaution. And the question was, you know, is there any way in which we're going to be – we are going to be viewed as strangers to this judgment, and the trial judge is going to say later on, uh-uh, too late, I changed my mind, your APA case doesn't really protect you completely. I think you've got the issue teed up very well, and you have a little bit of time to rebut if you'd like. I'll leave it. Okay. Thank you. Thank you for your argument. Counsel? Robert Bakes for the respondent. I'll split the time with the United States Attorney's Office. We'll take ten and they will take five. Okay. As I listened to the argument of the appellants, and as I read their brief, the first 37 pages, what this really comes down to is a request for a rehearing of the Kimberley case. They're not really concerned about these tenants, and rightfully so, because they've never been – their tenancy has not been interfered with. They still get government subsidies, and that's why we think this issue is moot, both as to the quiet title case, in which they didn't try to intervene in until after a final judgment was entered in this case, and after the property had already been sold to a non-profit entity, which is providing the same services to these same tenants, only with HUD subsidies rather than with the rural housing subsidies. And, of course, the Meadowbrook appellant has no interest in any property here. Meadowbrook was never a – one of the properties that was in the quiet title action, and so that Diana Rhodes should be dismissed having no interest. And it is moot as to the others, because these people are still in the same properties. They're still – they have government subsidies. And so what are they – what is this about? It's an effort on behalf of the interested people behind these tenants who want to try and get a different panel of this Court to reverse or modify the Kimberley decision. I understand that, Your Honor. Well, there's one thing I can assure you of. There's only three of us up here, and we're not empowered to overrule Kimberley. Well – We are empowered to distinguish it. Pardon? No, let me ask you this. Okay. Let's talk about – With respect to that, okay. Let's talk about Kimberley. Kimberley was a quiet title case. Yes. Okay. This is an APA case. Yes. The issue in the Kimberley case was whether, in effect, it was a glorified contract action. That overstates it, but it's between the parties to the loan agreement, the government and the – and the borrowers. The issue in the APA case is whether the agency violated the statute. Aren't – isn't that a very significant difference? No, for this reason. Kimberley was based upon the same contract that they're bringing up in the APA case. And in Kimberley, the district court dismissed the action, claiming that our sole remedy was a damages in the court of claims. This court reversed the district court in Kimberley and said, no, you're entitled to quiet your title. Well, what the court in Kimberley said was, in a 12B motion, certain defenses couldn't be raised. It was just a ruling on a motion to dismiss, wasn't it? It was a ruling on a motion to dismiss, which admits the facts alleged in the complaint. When it got back down to the district court, the government admitted all the facts that were in the complaint, and we moved for judgment on the pleadings, which the district court granted. We had two district courts in Idaho, Judge Windmill, Judge Boyle, and now Judge Brown here in these Oregon cases that are now before you. And so the question is, what will Judge Brown take up in the APA case? And that gets us to this question, the sovereign acts doctrine, and this unmistakability thing. It's called unmistakability. That's a misnomer. It should be the sovereign acts doctrine, which holds that when the government enters into contracts but enters into a sovereign act, which is a general or a public act, even though it has an effect on one of its contracts, it doesn't breach the contract. But if the government enacts a statute which is aimed specifically at breaching one of its contracts, or a number of them, then it's not a sovereign act. And the government cannot modify those contracts. As the Court quoted in the Kimberly case from the United States Supreme Court, the government can't do that, because when the government enters into contracts, it enters into contracts the same as any private individual when it enters into contracts. I'm sure to both my colleague here on my left, Judge Gould, and I, who were involved on different sides of the savings and loan crisis, the cases have a certain ring to them. Yes. I can imagine. Aren't in any of them, in any of the recorded cases where the government sort of 180 changed its position on accounting rules with respect to savings and loans and other risks, any of those cases allow specific performance? Yes. Not specific performance. And quiet title is not specific performance. But there is restitution in the Mobil Oil Company case, where the government did just the same. They made a contract with Mobil Oil that they could go out and develop some offshore drilling. And the Mobil Oil paid them $146 million to begin up front and to focus on the drilling. Let me use the phrase, enforce the rights under the contract. Wouldn't agreeing with your position on this issue, that is, enforcing the rights under the contract to allow the prepayment, have the effect of disregarding the Act of Congress? Well, the courts have described that as a, the Sovereign Act's doctrine, as a constitutional avoidance thing. Because otherwise, if the government could, by statute, specifically directed to contracts, modify those, then, as the Supreme Court has commented in their opinions, who would contract with the government? There is an overriding. You have a claim in the Court of Claims. Yes. The Supreme Court has told us you have a claim for this kind of thing in the Court of Claims. In Franconia, is it Franconia? Franconia's Court of Claims cases. But this is the only quiet title case that's been brought, because this is the only case that involves where the government is claiming a lien on our property. And the Congress has expressly provided for a remedy of quiet title, as this court said in Kimberley, and that when the federal courts give quiet title, that they apply the law of the states. And in this court, in Kimberley, explained what the law of Idaho was, and that the government loses its lien if it doesn't accept the prepayment. We have a right to prepay. Now, the overriding government interest in this is, the overriding interest of the government is that if the government can, by statute, directed at particular contracts, modify them, who will contract with the government? And if they do, the Supreme Court has said, if they let the government do that, the contract is illusory. They said that in Witt. Pardon? I guess there are always people willing to elevate hope over experience. Well, be that as it may, the Supreme Court has said in its opinions, and Justice O'Connor said in a question in the Franconia case, in the argument, she said, who would contract with a government if the government could just modify it by passing a law? Plus, the court in Winstar, in the Franconia, said that if the government can do that, then the contract's illusory. And if it's illusory, there's a lack of mutuality. You're not answering my question about the fact that if you contract with a government, you have one of these situations, you can file a claim under the Tucker Act to make yourself whole. No, it doesn't make yourself whole. Why not? Because damages- You get damages for whatever you suffered. Well, in the first place, damages, the common law rule always was that damages is not a adequate remedy when you're dealing with real property. And of course, that's why the statute is in there granting a quiet title, because damages is not an adequate remedy. And this court said in Kimberly, and the Supreme Court said in the Mobile Oil case, that you're entitled to equitable relief. And in fact, they said in one case, specific performance. And I forget which case it was. I had a quote in my materials here that I can't find it right now. But they said that you're not only entitled to damages, but specific performance. And if you're entitled to equitable relief, then why can't you get quiet title? Congress has specifically waived sovereign immunity in quiet title actions. And this is a rises, the district court had jurisdiction of this. And so as Mr. Schmidt has acknowledged, the federal courts apply state law in these kinds of causes of action, unless there's an overriding federal interest. And the overriding federal interest in this case is the fact that if you don't enforce these contracts, the government will not be able to get people that will contract with them. And I think that's what this court held in Kimberly. And this case is just an attempt to get a rehearing in Kimberly, and it should be denied. Thank you. You stopped at about the right time. We'll hear from the United States at this time. We have a few minutes left on the government's side of the equation. May it please the court, Kelly Zusman, appearing on behalf of the United States. We're in kind of a unique position here, because we lost the Kimberly case. And all of the arguments that the tenants have raised, we raised unsuccessfully, either here or in the Idaho District Court. So I'm here today to urge you to affirm Judge Brown's ruling that there was nothing unlawful about the agreement in principle that the United States entered into with DBSI and its successor. I think we were trying to make the best of a situation that we saw as very difficult. We were literally between a rock and a hard place, between Kimberly and ILLIPA, and took all of the steps that we thought we could take reasonably to protect the tenants and to ensure that the properties would either remain in the 515 program or would then fall under the Section 8 HUD program. So our position is Judge Brown got it precisely right, that there was nothing unlawful, and that DBSI and the United States were entitled to summary judgment relative to the agreement in principle and the denial of the tenants' APA claim. Unless the court has any other questions, I will. I don't see any. Thank you. Thank you. Now we'll hear from Mr. Schmidt in rebuttal. When Mr. Bakes was looking for that case that he said awarded specific performance for a violation of a government contract, I was on the edge of my seat because I've been looking for that case for the three years that this case has been pending. And if there was such a case, this would be we would really be in a different posture, and we may not even have an appeal. I don't think there's a case ever where someone has said, I've got a contract that says something different from what this Act of Congress says. The Act of Congress isn't unconstitutional. It applies to me, but I've got this contract, and I want it specifically enforced. I'm the promisee. Just that case doesn't exist, and Kimberly is not that case for the reasons we went into. On the issue of whether – I heard Mr. Bakes say that quiet title is not specific performance, and courts have given equitable relief in contract claims. That's a really different thing, and I just want to stress the difference between the two kinds of remedial schemes. I mean, for our purposes, the real division between remedies has nothing to do with equitable versus legal. It has everything to do with substitutionary versus specific. You know, we're talking about what kind of intrusiveness is there going to be on the workings of the political branches. How much can a court intrude on the, if at all, on the discretionary decisions of government? And for those purposes, money has always been thought to be okay. It's tolerated. In fact, there's a statute that gives a standing appropriation to pay money judgments. It's just a regular thing. I mean, it's 31 U.S.C. 1304 or something like that. But it's the most normal thing in the world. But specific performance, a Federal court telling an agency, you know, I'm going to enforce this contract, and you can't obey this statute, that's a big deal. And it's, to my knowledge, it's never been done. You know, whether, you know, whether rest, you look at restitution, which, you know, it's, quote, equitable, all that means is, you know, 500, 600 years ago, when you walked into Westminster, you would turn left and go to the chancery courts instead of right and going to the, you know, the king's courts. It doesn't have anything to do with function. What's really important is, you know, are you telling a government actor what to do from the bench, or are you just ordering damages? And, you know, for the, because of all the cases we cite, and particularly because of the Charleston case in the Eighth Circuit, we think the way that you accommodate the government's need to assure that it's going to have contracting partners in the future, its need to fulfill its obligations under contracts on the one hand, and its need to solve social problems through Congress and through the regulatory agencies, on the other hand, is, you know, the way you, the way it's always been resolved is money damages. And every single, that's why every single case that Kimberly cites to show that ELIPA is not a sovereign act, in every case that DBSI cites for the same proposition is a case for damages. Look at the cites alone, the Federal Circuit, Court of Claims. So, anyway, if, you know, I think that's, I can stop now unless you have questions. I think it's, both sides have presented it to us very well. It's a very interesting case, and it will now be submitted for decision. Thank you both.
judges: Hawkins, Silverman, Gould